11 McKAY, Judge.
STATEMENT OF CASE
Tremell Condolí, Montrial Green, Tyeast L. Robertson and Gentry M. Sylvester were charged by bill of information on May 13, 1997, with one count each of aggravated battery, La. R.S. 14:34 and one count each of aggravated oral sexual battery, La. R.S. 14:43.4. At their arraignments on June 16, 1997, the defendants pled not guilty. On April 27, 1999, Tyeast L. Robertson and Gentry M. Sylvester withdrew their former pleas of not guilty and entered pleas of guilty as charged. The court sentenced Tyeast L. Robertson to five years on each count, sentences to run concurrently with credit for time served. The sentence under La. R.S. 14:43.4 is without benefit of probation, par-ol or suspension of sentence. The court sentenced Gentry M. Sylvester to two years on each count, sentences to run concurrently. The sentence under La. R.S. 14:43.4 is without benefit of probation, parole or suspension of sentence. That same day Tremell Condolí and Montrial Green withdrew their former pleas of guilty and entered Alford[1] pleas of guilty. The court sentenced Tremell Condolí to two years on each count, sentences to run concurrently, credit for time served, sentence under La. R.S. 14:43.4 is without benefit of probation, parole or suspension of sentence. The court sentenced | {.Montrial Green to five years on each count, sentences to run concurrently, credit for time served, sentence under La. R.S. 14:43.4 is without benefit of probation, parole or suspension of sentence.
The court waived the sex offender registration requirement as to each of the defendants.
STATEMENT OF FACT
These crimes occurred in the Orleans Parish Prison. All of the defendants, as well as the victim, were incarcerated, awaiting trial on other charges at the time of these offenses.
Inmate, John Williams, the victim, gave an oral taped statement to the Special Investigation Unit of the New Orleans Police Department. He stated that on March 10, 1997, as he returned to his cell after buying a pie at the commissary, inmate Manet, who was not involved in these crimes, took the pie away from him. The victim and Manet agreed to a fight. The two inmates fought briefly in cell 7, and Manet returned to his cell. As the victim attempted to leave, the defendants entered the cell, and began beating and kicking him. They made him kneel on peanut butter lids while they beat him with a plastic toilet brush and plastic shower slippers. During the beating, Condolí produced a cigarette lighter and matches, and Condolí proceeded to burn the victim’s hand. The defendants told the victim to perform oral sex upon the defendant Robertson. When the victim refused, the defendants resumed the beating. The defendants threatened the victim with more torture if he continued to refuse to perform oral sex on the defendant Robertson. The victim relented. Robertson ejaculated.
13As a result of the torture, the victim sustained burns to his hand and arm, multiple bruises, swollen eyes and cuts on his knees. The severity of the injuries necessitated treatment at Charity Hospital. No one witnessed the attack. Other inmates were watching television in the dayroom, and the deputy assigned to the area kept *1099 post in a room just outside the cell tier. After reading and signing rights of arres-tee forms, Robertson, Green and Condolí gave oral taped statements.
The defendant Robertson stated that the defendant Condolí forced the victim to suck defendant Robertson’s penis. Robertson also admitted to taking out his penis so the victim would suck it.
The defendant Green stated that after the beating, the defendant Robertson wanted the victim to perform oral sex on him. The victim complied because of the torture.
The defendant Condolí admitted that he burned the victim’s hand, and told the victim to perform oral sex on the defendant Robertson.
The defendant Gentry refused to give a taped statement; however, after signing the rights of arrestee form, Gentry was interviewed by Detective Gregory Rickson of the Special Investigation Division, and admitted punching and kicking the victim.
ASSIGNMENT OF ERROR NUMBER 1
In its first assignment of error, the State argues that the trial court improperly concluded that the nature of the crime did not mandate registration under the sex offender law. The State further argues that the trial court erroneously granted the defendants’ motions to be relieved of the registration requirement without a hearing.
[4La. R.S. 15:540, et seq., provides for the registration of sex offenders, sexually violent predators, and child predators. La. R.S. 15:542 has undergone several revisions since enactment. The most recent amendments to La. R.S. 15:542 B(2)(a) by Acts 1999, Nos. 930, § 1, and 1150 § 1, changed the notification scheme, requiring that a photograph of the offender appear in the notice provided to the journal or newspaper, and reduced the time frame for registration and notification, respectively. At the time of defendants’ 1999 arrests and convictions, however, La. R.S. 15:542 provided for registration as follows:
A. Any adult residing in this state who has pled guilty or has been convicted of any sex offense and any juvenile who pled guilty or has been convicted of a sex offense as provided for in Children’s Code Article 857 shall register with the sheriff of the parish of the person’s residence. If the adult or juvenile resides in a parish with a population in excess of four hundred fifty thousand, he shall register with the police department of his municipality of residence.
B. The person and the juvenile sex offender shall, within thirty days of establishing residence in Louisiana, or if a current resident, within fifteen days after conviction or release from confinement, whichever occurs later, provide the sheriff or, if required under Subsection A, the police department with the following information: his name, address, and place of employment; crime for which he was convicted; the date and place of such conviction; any aliases used by the person; and the person’s social security number. Excluding the juvenile sex offender, the person shall also:
(1) Give notice of the crime for which he was convicted, his name, and address to:
(a) At least one person in every residence or business within a one mile radius in a rural area and a three square block area in an urban or suburban area of the address where the defendant will reside upon release.
(b) The superintendent of the school district where the defendant will reside, who shall notify the principal of every school located within a one-mile radius of the address where the offender will reside and may notify the principals of other schools as he deems appropriate. The principal of any such school upon receipt of the notification shall post notices in conspicuous areas at the school which state the defendant’s name, address, and the crime for which he was *1100 convicted. Failure of the superintendent or principal to comply with |Kthe provisions of this Subparagraph shall not be construed to impose civil liability on any person.
(c) The lessor, landlord, or owner of the residence or the property on which he resides.
(2)(a) Give notice of the crime for which he was convicted, his name, and his address by mail to all people residing within the designated area within twenty-one days of the sentencing or release from confinement or within twenty-one days of establishing residency in the locale where the offender plans to have his domicile, and that the notice shall be published on two separate days within this the applicable period provided for herein, without cost to the state, in the official journal of the governing authority of the parish where the defendant plans to reside and, if ordered by the sheriff or police department, in a newspaper which meets the requirements of R.S. 43:140(3) for qualification as an official journal and which has a larger or small circulation in the parish than the official journal.
(b) In the parish of St. Tammany, the sheriff or police department may order that the notice be published in a newspaper which meets the requirements of R.S. 43:140(3) for qualification as an official journal and which has a larger circulation in the parish than the official journal.
(3) Give any other notice deemed appropriate by the court in which the defendant was convicted of the offense that subjects him to the duty to register, including but not limited to signs, handbills, bumper stickers, or clothing labeled to that effect.
(4) State under oath where he will reside after sentencing or release.
C. If any person required to register pursuant to this Section changes his residence address within the same parish, the person shall send written notice of the change of address to the sheriff or, if required under Paragraph A, the police department, within ten days of establishing the new residence. If any person required to register pursuant to this Section moves to a new parish, the person shall register with the sheriff or, if required under Paragraph A, the police department, in the new parish within ten days of establishing the new residence. The person shall also send written notice within ten days after the change of address in the new parish, to the sheriff or, if required under Paragraph A, the police department with whom the person last registered.
D. The sheriff or police department shall obtain a photograph of the person and shall obtain a copy of the person’s fingerprints.
E. “Sex offense” for the purpose of this Chapter means conviction for the perpetration or attempted perpetration of any provision of R.S. | fi14:92(A)(7), of Subpart C of Part II, Subpart B of Part IV, or Subpart A(l) or A(4) of Part V, of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950[2], committed on or after June 18, 1992, or committed prior to June 18, 1992 if the person, as a result of the offense, is under the custody of the Department of Public Safety and Corrections on or after June 18, 1992. A conviction for any offense provided in this definition includes a conviction for the offense under the laws of another state which is equivalent to an offense provided for in this Chapter.
The defendants all pled guilty to the crime of aggravated oral sexual battery, a violation of La. R.S. 14:43.4, which is contained in Subpart C of Part II of Chapter 1 of Title 14 of the Louisiana Revised *1101 Statutes of 1950. The offense, therefore, fits the definition of “sex offense” for registration purposes under La. R.S. 15:542 E.
However, at the time of the defendants’ convictions, La. R.S. 15:544 B allowed a defendant having a duty to register and give notice under La. R.S. 15:542 to petition the court in which the defendant was convicted to be relieved of the registration and notification requirements.[3] La. R.S. 15:544 B provided:
Any person having the duty to register and give notice under R.S. 15:542 may petition the court to be relieved of that duty. The petition shall be made to the court in which the petitioner was convicted of the offense that subjects him to the duty to register, or, in the case of conviction in other states, to the district court of the parish in which the person is registered. The district attorney of the parish shall be named and served as the defendant in any such petition. The court shall consider the nature of the sex offense committed and the criminal and relevant noncriminal behavior of the petitioner, both before and after conviction, and may consider other factors. The court may relieve the petitioner of the duty to register and give notice only if the petitioner shows, with clear and convincing evidence, that future registration of the petitioner will not serve the purposes of this Chapter.
|7In this case, all of the defendants’ filed motions to be relieved of the duty to register as sex offenders. At the sentencing on April 27, 1999, the court granted the motions reasoning:
... the court believes that this is not the type of situation that the law was intended to cover ...
There were no specific reasons articulated by the court for its ruling, nor did the defendants offer any evidence to support their contention that they should not be required to register as sex offenders. The defense argues that the purpose of the registration statute would not be served in this case because “[t]his type of incident, under these circumstances is generally considered common among prison life, and not necessarily an indicator of unusual sexual propensities.” The defendants cite no statutory authority or case law for their position.
The public policy behind the registration and notification requirements is set forth in La. R.S. 15:540, which states:
A. The legislature finds that sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest. The legislature further finds that local law enforcement officers’ efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses and crimes against victims who are minors, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders, sexually violent predators, and child predators who live within the agency’s jurisdiction, and the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety. Restrictive confidentiality and liability laws governing the release of information about sex offenders, sexually violent predators, and child predators have reduced willingness to release information that could be appropriately released under the public disclosure laws, and have increased risks to public safety. Persons found to have committed a sex offense or a crime against a victim who is a *1102 minor have a reduced expectation of 1 sprivacy governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.
B. Therefore, this state’s policy is to assist local law enforcement agencies’ efforts to protect their communities by requiring sex offenders, sexually violent predators, and child predators to register with state and local law enforcement agencies and to require the exchange of relevant information about sex offenders, sexually violent predators, and child predators among state, local, and federal public agencies and officials and to authorize the release of necessary and relevant information about sex offenders, sexually violent predators, and child predators to members of the general public as provided in this Chapter.
In this case there was no hearing in which the defendants showed, by clear and convincing evidence, as mandated by La. R.S. 15:544 B, that the defendants’ registration would not serve the purposes of the sex offender statute. Absent a hearing, there was no examination of possible past sexual offense convictions. Considering: 1) the strong public policy statement of La. R.S. 15:540, coupled with unequivocal statutory language mandating registration, La. R.S. 15:542 A, 2) and the fact that the defendants were convicted of a sex offense falling within the statute’s reach, La. R.S. 15:542 E, 3) and the absence of clear and convincing evidence that the defendants’ registration would not serve the purposes of the sex offender registration scheme, La. R.S. 15:544 B, it appears the court erred in relieving them of the obligation. This assignment has merit.

ASSIGNMENT OF ERROR NUMBER 2

In a second assignment of error the State complains the trial court had no authority to waive the sex offender registration requirements where the State entered into a plea bargain agreements with the defendants Green and Robertson, and waiver of the registration requirement was not part of those agreements.
|9The State asserts that defendant Green pled guilty in exchange for the State’s agreement not to file a multiple bill. The State argues that it was not aware of the court’s intention to reheve Green of the registration obligation until after it had signed the plea. In response to the court’s action, the State objected:
In terms of Mr. Green, we have reached a plea agreement with Mr. Green and relieving him of his sexual offender registration requirements was not part of that agreement.
As for defendant Robertson, the State announced the terms of the plea agreement:
Judge, for the record and for purposes of appeal, the State is offering the defendant, Tyeast Robertson, a no bill in exchange for his plea of guilty as to both counts, aggravated battery and aggravated oral sexual battery. The State is not including in that plea agreement a waiver of the registration of sex offenders. And for the record for purposes of appeal, the reason that we are not including that in this plea agreement is because Mr. Robertson is the recipient of the oral sexual battery charge.
In State v. Calhoun, 94-2567 (La.App. 1st Cir. 2/23/96), 669 So.2d 1351, reversed on other grounds 96-0786 (La.5/20/97), 694 So.2d 909, the First Circuit concluded:
Registration under La. R.S. 15:542 is not part of the defendant’s sentence for his conviction ... but is a statutory requirement for all convicted sex offenders in Louisiana. La. R.S. 15:540-549 exposes the defendant to additional penalties for failure to comply with these provisions. The provisions are not negotiable; thus, waiver of the registration ... requirement could not have been a part of the *1103 defendant’s agreement to plead guilty. .(citations omitted)
669 So.2d at 1355.
In light of State v. Calhoun, it appears the trial court erred in relieving defendants Green and Robertson of the statutorily mandated registration requirement of La. R.S. 15:542.
| ^The trial court ruled on the petitions of the defendants without conduction a full hearing on the merits. Accordingly, we reverse the ruling of the trial court’s waiving the defendants’ requirement to register as sexual offenders and remand the matter to the trial court to conduct a full contradictory hearing on the matter.
REVERSED AND REMANDED.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. In subsection E, see R.S. 14:41 et seq.; R.S. 14:76 et seq.; R.S. 14:80 et seq.; and R.S. 14:89 et seq., respectively.

. La. R.S. 15:544(B) was repealed by Acts 1999, No. 594 § 2, effective August, 1999.